UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

```
_____
                               |
UNITED STATES OF AMERICA,      |
               Plaintiff,      |       Criminal No.
                               |    3:15-CR-00231-RNC
          vs.                  |
                               |
ADAM SIEGEL,                   |    December 21, 2015
               Defendant.      |
_____|
```

Federal Building
450 Main Street
Hartford, Connecticut

PLEA AGREEMENT

(Transcription from Electronic Recording)

Held Before:

THE HON. DONNA F. MARTINEZ
United States Magistrate Judge

Transcription Services of
FALZARANO COURT REPORTERS, LLC
4 Somerset Street
Simsbury, CT 06070
860.651.0258
www.falzaranocourtreporters.com

A P P E A R A N C E S:


    For the Plaintiff:


        OFFICE OF THE UNITED STATES ATTORNEY
        157 Church Street – 23rd Floor
        New Haven, Connecticut 06510
        203.821.3700
            BY:  JONATHAN N. FRANCIS, ESQ.
                Assistant U.S. Attorney
                    -and-
                DAVID E. NOVICK, ESQ.
                Assistant U.S. Attorney


    For the Defendant:


        ROBINSON & COLE, LLP
        280 Trumbull Street
        Hartford, Connecticut 06103
        860.275.8346
            BY:  NUALA E. DRONEY, ESQ.

        WEIL, GOTSHAL & MANGES, LLP
        767 Fifth Avenue
        New York, New York 10153
        212.310.8000
            BY:  CHRISTOPHER L. GARCIA, ESQ
                    -and-
                RAQUEL KELLERT, ESQ.

```
1              (Proceedings commenced at 12:10 p.m.)
2              THE COURT:  All right.  Good afternoon.
3    This is United States versus Adam Siegel,
4    15-Criminal-231, assigned to Judge Chatigny.
5              Would you identify yourselves please for
6    the record.
7              MR. FRANCIS:  Good afternoon, Judge.  For
8    the Government, Jonathan Francis.  With me at
9    counsel table is Assistant United States
10   Attorney David Novick.
11             MS. DRONEY:  Good morning, your Honor.  For
12   the Defendant Adam Siegel, Nuala Droney from
13   Robinson & Cole.  And with me at counsel table,
14   Christopher Garcia and Raquel Kellert from the
15   law firm of Weil, Gotshal & Manges.
16             I have their motions for admission pro hac
17   vice as well as my own appearance to be filed
18   manually with the court right now, if your Honor
19   will.
20             THE COURT:  All right.  Hand them up.
21             MS. DRONEY:  May I approach, your Honor?
22             THE COURT:  Yes.
23             Has the Government seen that?
24             MS. DRONEY:  Yes, your Honor.
25             THE COURT:  They appear to be in order?
```

```
 1              MR. FRANCIS:  They do.

 2              THE COURT:  All right.  Be seated, please.

 3              (Pause.)

 4              THE COURT:  All right.  I've reviewed the

 5         paperwork.  It appears to be in order, and

 6         Attorneys Garcia and Kellert may appear.

 7              Who are we going to be hearing from?

 8              MR. GARCIA:  Thank you, your Honor.

 9         Christopher Garcia for Mr. Siegel.

10              THE COURT:  All right.  I understand that

11         Mr. Siegel wants to waive indictment and enter a

12         plea of guilty to a one-count information

13         charging him with the conspiracy to commit

14         securities fraud in violation of 18 United

15         States Code Section 371; is that correct?

16              MR. GARCIA:  That's correct, your Honor.

17              THE COURT:  All right.

18              Mr. Siegel, the first matter to be taken up

19         this afternoon before we proceed to your waiver

20         of indictment and guilty plea is the matter of

21         the referral of your case to me and your consent

22         to the referral.

23              There are two kinds of judges in the

24         federal system, Magistrate Judges and District

25         Judges.  The two have different kinds of
```

1    authority.

2         I'm a Magistrate Judge.  Without the

3    referral of a District Judge and a defendant's

4    consent, as a Magistrate Judge I could not

5    handle a proceeding such as this, a change of

6    plea in a criminal case in which a felony is

7    charged.  The proceeding would be handled by a

8    District Judge.

9         The District Judge to whom your case is

10   assigned has referred your case to me to handle

11   this proceeding and to make a recommendation to

12   him as to whether he should accept your guilty

13   plea.  The referral is only for the sake of

14   convenience.  There's no other reason.  After

15   this, your case will go back to the District

16   Judge for all remaining proceedings.

17        I cannot take your guilty plea unless you

18   consent to my doing so.  You may consent to have

19   this proceeding before me, or you may have this

20   proceeding before a District Judge.

21        Have you discussed your consent to having

22   this proceeding before me with your counsel?

23        THE DEFENDANT:  Yes, your Honor.

24        THE COURT:  Do you want to have this

25   proceeding before me, or would you prefer to

```
 1              have it before a District Judge?
 2                   THE DEFENDANT:  Your -- we can have this
 3              proceeding before you, your Honor.
 4                   THE COURT:  All right.  Does the Government
 5              consent?
 6                   MR. FRANCIS:  We do, your Honor.
 7                   THE COURT:  Do you have the consent form
 8              before you, Counsel?
 9                   MR. GARCIA:  I do, your Honor.
10                   THE COURT:  Mr. Siegel, if you want to have
11              this proceeding before me, you may sign the
12              consent form.  If you don't want to have this
13              proceeding before me, you should not sign the
14              consent form.  If you want to discuss the matter
15              further with counsel, you may do that.
16                   The defendant signed the consent form.
17              Counsel are signing the consent form.  It may be
18              filed.
19                   I find that the defendant understands that
20              he has a right to have this proceeding before a
21              District Judge and has knowingly and voluntarily
22              waived that right and consented to proceed
23              before a Magistrate Judge.
24                   Mr. Siegel, before I take your guilty plea,
25              there are a number of questions that I must ask
```

```
1        you while you're under oath.  The purpose of the

2        questions is to make sure that you know what

3        you're doing, that you understand your rights,

4        that you understand the consequences of a guilty

5        plea, and that you want to plead guilty because

6        you are guilty.

7             If you don't understand any of my

8        questions, please don't hesitate to say so, and

9        I'll reword the question.  All right?

10            THE DEFENDANT:  Yes, your Honor.

11            THE COURT:  All right.  Place the defendant

12       under oath.

13            COURTROOM DEPUTY:  Yes, your Honor.

14            Please raise your right hand.

15            You do solemnly swear any response you make

16       on the Court's inquiry of you shall be the

17       truth, the whole truth, and nothing but the

18       truth so help you God?

19            THE DEFENDANT:  Yes.

20            COURTROOM DEPUTY:  Thank you.

21            THE COURT:  You've now sworn to tell the

22       truth.  If you answer any of my questions

23       falsely, you'll be subject to the penalties for

24       perjury or for making a false statement.

25            Do you understand?
```

```
1                    THE DEFENDANT:  Yes, your Honor.

2                    THE COURT:  What's your full name?

3                    THE DEFENDANT:  Adam Lawrence Siegel.

4                    THE COURT:  Have you ever used any other

5          names?

6                    THE DEFENDANT:  No, your Honor.

7                    THE COURT:  Where were you born?

8                    THE DEFENDANT:  Miami, Florida.

9                    THE COURT:  How old are you?

10                   THE DEFENDANT:  37.

11                   THE COURT:  What schooling or education

12         have you had?

13                   THE DEFENDANT:  I've -- my highest degree

14         is an AB from Dartmouth College.

15                   THE COURT:  Are you presently under the

16         influence of alcohol or any drugs or medicine?

17                   THE DEFENDANT:  No, your Honor.

18                   THE COURT:  Have you had any alcohol or

19         drugs or medicine within the past 72 hours?

20                   THE DEFENDANT:  I've had one drink and one

21         Valium.

22                   THE COURT:  When was that?

23                   THE DEFENDANT:  I had a drink two days ago

24         and a Valium last night.

25                   THE COURT:  All right.  I gather you're not
```

1           feeling the effects from either?

2                THE DEFENDANT:  No, your Honor.

3                THE COURT:  Are you now or have you

4           recently been under treatment by a doctor?

5                THE DEFENDANT:  No, your Honor.

6                THE COURT:  Are you now or have you

7           recently been under treatment by a psychiatrist,

8           psychologist, or other mental health provider?

9                THE DEFENDANT:  No, your Honor.

10               THE COURT:  Are you now or have you

11          recently been treated for substance abuse?

12               THE DEFENDANT:  No, your Honor.

13               THE COURT:  How do you feel today; that is,

14          how is your health today?

15               THE DEFENDANT:  I'm healthy.

16               THE COURT:  Is your mind clear?

17               THE DEFENDANT:  My mind is clear.

18               THE COURT:  Are you able to understand

19          everything that's going on here?

20               THE DEFENDANT:  Yes, your Honor.

21               THE COURT:  Counsel, have you had any

22          difficulty communicating with your client?

23               MR. GARCIA:  No, I have not, your Honor.

24               THE COURT:  Do you have any doubts at all

25          as to his competence to proceed at this time?

```
1                    MR. GARCIA:  No, I do not, your Honor.

2                    THE COURT:  Mr. Siegel, are you satisfied

3              with the services of your lawyer?

4                    THE DEFENDANT:  Yes, your Honor.

5                    THE COURT:  Have you received a copy of the

6              written charge that the Government proposes to

7              file against you in this case, the information?

8                    THE DEFENDANT:  Yes, your Honor.

9                    THE COURT:  Do you understand the charge?

10                   THE DEFENDANT:  Yes, your Honor.

11                   THE COURT:  Have you discussed it fully

12             with your lawyer?

13                   THE DEFENDANT:  Yes, your Honor.

14                   THE COURT:  The charge is contained in an

15             information which alleges a violation of

16             18 United States Code Section 371, the

17             conspiracy to commit securities fraud.

18                   Do you understand that that charge is a

19             felony, that is, a crime punishable by more than

20             one year in jail?

21                   THE DEFENDANT:  Yes, your Honor.

22                   THE COURT:  I understand that you want to

23             waive indictment and plead guilty to the felony

24             charge in the information; is that right?

25                   THE DEFENDANT:  Yes, your Honor.
```

Falzarano Court Reporters, LLC

1          THE COURT:  Before you may waive

2     indictment, I must make certain that you

3     understand your right to have your case

4     presented to a grand jury.

5          Under the Constitution of the

6     United States, the Government cannot prosecute

7     someone for a felony unless it first obtains an

8     indictment from a federal grand jury.

9          A grand jury is a group of citizens who are

10    called in to hear the Government's evidence.

11    The grand jury is composed of at least 16 but

12    not more than 23 people.  Before you could be

13    indicted, at least 12 of the grand jurors would

14    have to find that there was probable cause to

15    believe that a crime was committed and that you

16    committed it.

17          I'm told that you want to waive or give up

18    the right to have your case presented to the

19    grand jury.  If you do that, you are waiving

20    your right to require that the Government

21    present its case to the grand jury, and you're,

22    therefore, giving up the possibility that the

23    grand jury might refuse to indict you.

24          Do you understand?

25          THE DEFENDANT:  Yes, your Honor.

```
1              THE COURT:  If you do not waive indictment,
2         the Government may present the case to the grand
3         jury and ask the grand jury to indict you.  The
4         grand jury might indict you, or the grand jury
5         might not indict you.
6              But if you waive your right to indictment,
7         the felony charges against you will be brought
8         by the United States Attorney by the filing of
9         this information which your lawyer has shown
10        you.  The case will proceed against you on the
11        United States Attorney's information just as
12        though you had been indicted.
13             Have you discussed waiving your right to
14        indictment by the grand jury with your lawyer?
15             THE DEFENDANT:  Yes, your Honor.
16             THE COURT:  Do you understand your right to
17        indictment by a grand jury?
18             THE DEFENDANT:  Yes, your Honor.
19             THE COURT:  Have any threats or promises
20        been made to induce you to waive indictment?
21             THE DEFENDANT:  No, your Honor.
22             THE COURT:  Is anyone forcing you to waive
23        indictment?
24             THE DEFENDANT:  No, your Honor.
25             THE COURT:  Do you want to waive your right
```

1          to indictment by the grand jury?

2                    THE DEFENDANT:  Yes, your Honor.

3                    THE COURT:  Counsel, is there any reason

4          why your client should not waive indictment?

5                    MR. GARCIA:  No, your Honor.

6                    THE COURT:  How about the Government?  Does

7          the Government know of any reason?

8                    MR. FRANCIS:  We do not.

9                    THE COURT:  Has the Assistant United States

10         Attorney prepared the necessary waiver form?

11                   MR. FRANCIS:  I did, your Honor, and

12         counsel has it.

13                   THE COURT:  All right.  The defendant may

14         now sign the waiver form in open court.

15              Defendant signed the waiver form.  I find

16         that the waiver is knowingly, intelligently, and

17         voluntarily made, and I accept it.

18                   MR. FRANCIS:  May I approach?

19                   THE COURT:  The waiver form may be filed.

20         The information may be filed.

21                   MR. FRANCIS:  Judge, I'm approaching with

22         the waiver form as well as the Government's

23         information.

24              (Pause.)

25                   THE COURT:  Mr. Siegel, the first or the

```
1              most important thing that you must understand is
2              that you have a right to plead not guilty and to
3              persist in that plea of not guilty even if you
4              are guilty.  If you continue in a plea of not
5              guilty, you'll be entitled to a trial by a jury
6              with the assistance of a lawyer at the trial and
7              at every other stage of the case.  If you cannot
8              afford a lawyer, the Court will appoint a lawyer
9              for you at no cost to you.
10                  Do you understand?
11                  THE DEFENDANT:  Yes, your Honor.
12                  THE COURT:  If you were to go to trial, you
13             would be presumed innocent, and the Government
14             would have to prove your guilt beyond a
15             reasonable doubt.  If the Government were to
16             fail, the jury would have to find you not
17             guilty.
18                  Do you understand?
19                  THE DEFENDANT:  Yes, your Honor.
20                  THE COURT:  If the course of the trial, any
21             witnesses for the Government would have to come
22             to court and testify in your presence.  Your
23             lawyer would have the right to cross-examine any
24             witnesses for the Government and to object to
25             any evidence offered by the Government.
```

1           Do you understand that?

2           THE DEFENDANT:  Yes, your Honor.

3           THE COURT:  At a trial you would have the

4     right to testify if you chose to do so, but you

5     could not be required to testify.  If you

6     decided not to testify, the jury would be

7     instructed that they could not hold that against

8     you.

9           Do you understand?

10          THE DEFENDANT:  Yes, your Honor.

11          THE COURT:  If the case were tried, you

12    would have the right to present evidence in your

13    defense and to require the attendance of

14    witnesses to testify in your defense, but you

15    would not be required to present any evidence or

16    call any witnesses.  If you chose not to present

17    any evidence or call any witnesses, the jury

18    would be instructed that they could not hold

19    that against you.

20          Do you understand?

21          THE DEFENDANT:  Yes, your Honor.

22          THE COURT:  If you plead guilty, you'll be

23    giving up your right to remain silent and not

24    incriminate yourself with regard to the conduct

25    involved in the plea.  If you decide to plead

```
1              guilty, I'll have to ask you questions about
2              what you did to satisfy myself that you are
3              guilty, and you'll have to answer my questions
4              and acknowledge your guilt.
5                   Do you understand?
6                   THE DEFENDANT:  Yes, your Honor.
7                   THE COURT:  When you do that, you'll be
8              waiving your privilege against
9              self-incrimination.
10                  Do you understand what I mean?
11                  THE DEFENDANT:  Yes, your Honor.
12                  THE COURT:  If you plead guilty and your
13             plea of guilty is accepted by the District
14             Judge, you'll be giving up your constitutional
15             right to a jury trial and all the other rights
16             that I've just discussed.  There'll be no trial
17             of any kind.  You'll be found guilty on the
18             basis of your guilty plea.
19                  Do you understand?
20                  THE DEFENDANT:  Yes, your Honor.
21                  THE COURT:  Are you willing to give up your
22             right to a trial and all these other rights I've
23             just discussed?
24                  THE DEFENDANT:  Yes, your Honor.
25                  THE COURT:  Is there a written plea
```

```
1              agreement?

2                   MR. FRANCIS:  There is, your Honor.

3                   THE COURT:  Have you read this agreement,

4         Mr. Siegel?

5                   THE DEFENDANT:  I have.

6                   THE COURT:  Do you understand it?

7                   THE DEFENDANT:  Yes, I do.

8                   THE COURT:  Do you want to sign it?

9                   THE DEFENDANT:  Yes, I will.

10                  THE COURT:  You may sit down and sign it.

11                  MR. FRANCIS:  Your Honor, for the record,

12        the defendant previously signed this, and so

13        we've asked him to sign again.

14                  THE COURT:  He should just sign above his

15        prior signature.

16                  (Pause.)

17                  THE COURT:  All right.  You've signed it?

18                  All right.  Let's have the Government

19        outline the terms of the agreement.

20                  You may be seated.

21                  THE DEFENDANT:  Thank you.

22                  MR. FRANCIS:  Your Honor, the Government's

23        plea agreement with the defendant consists of

24        three documents taken together.  One is a

25        nine-page letter from the Government to
```

```
1            Mr. Polkes, one of Mr. Siegel's defense
2       attorneys.  There's also a two-page addendum to
3       that -- or rather, a two-page letter that
4       functions as an addendum to the agreement.
5       There's also a letter to Mr. Polkes, and then
6       there's a four-page cooperation agreement that
7       the defendant proposes to enter into in open
8       court here today.
9            The nine-page plea agreement on page 1 sets
10      forth the nature --
11            THE COURT:  Just a moment.
12            MR. FRANCIS:  Sure.
13            THE COURT:  What is the addendum?
14            MR. FRANCIS:  The addendum is a two-page
15      letter in which -- it sets forth the
16      provisions -- what would happen, the
17      consequences, if Mr. Siegel withdrew from his
18      plea.
19            THE COURT:  I have --
20            MR. FRANCIS:  Does your Honor have a copy
21      of that?
22            THE COURT:  I have not seen that.
23            MR. FRANCIS:  I'd be happy to hand one up.
24      May I approach?
25            (Pause.)
```

```
1                    THE COURT:  Be seated.

2                    (Pause.)

3                    THE COURT:  Is this a copy?

4              MR. FRANCIS:  That is a copy, your Honor.

5         The original is with the defense.

6                    THE COURT:  All right.

7              All right.  So you said the plea agreement

8         which I have seen, this two-page addendum dated

9         November 25th, which I've seen.  There's a

10        cooperation letter; correct?

11             MR. FRANCIS:  There is, which has not yet

12        been executed by the defendant.

13                   THE COURT:  All right.  And the cooperation

14        letter makes reference to a November 1st letter

15        and a November 25th letter?

16             MR. FRANCIS:  That's right, your Honor.

17        That's the plea agreement and then the plea

18        addendum.

19                   THE COURT:  All right.  Thank you.

20             All right.  Why don't you summarize, if you

21        will, the plea agreement.

22             MR. FRANCIS:  Sure, your Honor.

23             As I said, it's a nine-page letter from my

24        office to Mr. Polkes, which is Mr. Garcia's

25        partner.  It sets forth on page 1 the nature of
```

20

1       the offense, which is, as your Honor just said

2       several times, a conspiracy to commit securities

3       fraud in violation of 18 United States Code

4       Section 371.

5           On page 1 there is a provision, an unusual

6       provision, that your Honor has seen before in a

7       related case dealing with the effect of a case

8       recently decided by the Second Circuit, United

9       States versus Litvak, with the effect of a

10      decision, a final decision, in that case by

11      either the Second Circuit or the United States

12      Supreme Court holding that Mr. -- the defendant

13      in that case Jesse Litvak had not committed

14      securities fraud as a matter of law, that would

15      entitle Mr. Siegel to withdraw his plea of

16      guilty provided we're in a presentencing

17      posture.

18          Bottom of page 1 proceeding on to page 2,

19      it sets forth the elements of a conspiracy to

20      commit securities fraud.

21          Page 2 deals with the penalties that

22      Mr. Siegel faces for pleading guilty, which

23      include a five-year term of imprisonment, a

24      three-year term of supervised release with an

25      additional two years upon a finding of a

1        violation of supervised release without credit

2        for time already served, a fine of $250,000

3        under the statute 371, under the conspiracy

4        statute.

5            However, the alternative fine provision

6        under 18 United States Code Section 3571 applies

7        here, which provides that Mr. Siegel would be

8        subject to a fine that is the greatest of two

9        times the gain, two times the loss of the

10       offense -- caused by the offense or $250,000.

11       In this case the greatest of those would be two

12       times the loss, which, although the Government

13       is not prepared to calculate with any kind of

14       specificity, would certainly be millions of

15       dollars.

16           There's also a $100 special assessment.

17           Bottom of page 2 deals with restitution

18       that would be payable.  This is a mandatory

19       restitution case.

20           Page 3 deals with the sentencing

21       guidelines.  Mr. Siegel recognizes that they are

22       advisory in nature, and one of the factors that

23       the sentencing Court must consider under

24       section -- 18 United States Code Section 3553(a)

25       in crafting the sentence.

```
 1            There's also a section dealing with the
 2       effect of his acceptance of responsibility by
 3       which the Government commits to agree -- or
 4       rather, agrees that there's a two-level
 5       reduction of Mr. Siegel's guideline range
 6       attributable to his acceptance of
 7       responsibility, and the Government commits to
 8       moving for the third point for acceptance.  And
 9       then it also -- the letter also sets forth the
10       conditions that Mr. Siegel must meet if he would
11       like to keep those reductions to his sentencing
12       guideline in place.
13            Page 4 deals with the guideline
14       stipulations.  There's no substantive stipulated
15       calculation of guidelines in this plea
16       agreement, nor is there a stipulated offense
17       conduct attached to it.
18            Both the Government and the defendant
19       reserve their rights to take any position
20       whatsoever regarding calculation of guidelines
21       when it comes to this sentence.
22            And page 4 also deals with Mr. Siegel's
23       appellate rights, which are waived with certain
24       exceptions.  The first exception is that
25       Mr. Siegel retains his right to collaterally
```

1      attack or appeal on the basis of ineffective

2      assistance of counsel.

3           Going on to page 5, Mr. Siegel also

4      reserves his right to appeal his sentence.

5           Then the final reservation of right or

6      exception to the appellate waiver is -- once

7      again deals with this case of United States

8      versus Litvak recently decided by the Second

9      Circuit to the extent that, after sentencing, if

10     there's a final decision either by the Second

11     Circuit, presumably on either a rehearing or if

12     the case is retried on a second appeal, or from

13     the United States Supreme Court that finds that

14     Mr. Litvak did not commit securities fraud as a

15     matter of law, then Mr. Siegel will be entitled

16     to assert any appellate or collateral -- or

17     collaterally attack that is possible.

18          To the extent that your Honor -- we dealt

19     with this previously in that related case, but

20     if your Honor would like to hear more about

21     that, the effect of the Litvak case, I can

22     explain it much more in detail if it's

23     necessary.

24          Page 5, continuing with the plea agreement,

25     the Government has reserved the right to provide

```
1         information to the Court, the United States

2         Probation Office with respect to sentencing.

3             Page 5 also sets forth Mr. Siegel's -- or

4         begins to set forth Mr. Siegel's waiver of

5         rights, many of which your Honor has already

6         addressed, which include the right to

7         indictment, the right to trial, and the

8         attendant consequences upon being found guilty.

9             Page 6 tolls -- Mr. Siegel explicitly

10        agrees to toll the statute of limitation against

11        him.

12            Page 6 also contains an acknowledgement

13        that Mr. Siegel is pleading guilty because he

14        is, in fact, guilty of engaging in the

15        conspiracy to commit securities fraud and sets

16        forth that his plea is voluntary and is not the

17        product of any threats or coercion.

18            Page 6 also deals with the scope of this

19        agreement, which is an agreement with respect to

20        his criminal liability between my office and

21        him.

22            Page 6 -- the bottom of page 6 continuing

23        on to page 7 deals with the collateral

24        consequences of being found guilty of a felony.

25            Page 7 has a provision dealing with the
```

1           fact that this satisfies -- this guilty plea

2           will satisfy Mr. Siegel's criminal liability in

3           the District of Connecticut for engaging in this

4           conspiracy to commit securities fraud.

5                   And, finally, on page 7 Mr. Siegel agrees

6           that he -- there are no other promises other

7           than those in writing in the two other

8           agreements that I referred to, your Honor, which

9           are the addendum to this plea agreement and the

10          cooperation agreement that we propose to enter

11          into today.

12                  And then page 8 is the signature page.

13                  Mr. Siegel's counsel executed this

14          agreement on November 1st, Mr. Siegel executed

15          it on November 4th of this year, and then the

16          Government executed it thereafter.

17                  THE COURT:  All right.  And why don't you

18          proceed to a discussion of the November 25th

19          addendum.

20                  MR. FRANCIS:  Yes, your Honor.

21                  The November 25th addendum, as I said, is a

22          two-page letter from my office to Mr. Siegel

23          dealing with the consequences if Mr. Siegel

24          withdrew his plea.  This was entered into in

25          consideration of the fact that there was quite a

1    long period of time in between Mr. Siegel

2    signing the plea agreement on November 4th and

3    today, December 21st, the actual timing of the

4    plea itself.

5        This addendum in substantial part states

6    that, if Mr. Siegel withdraws from the plea

7    agreement or fails to comply with the

8    conditions, the Government could use his

9    proffered statements against him, and the

10   exception for this once again deals with this

11   Litvak case.  This addendum was not meant in any

12   way to restrict any of the rights that were set

13   forth in the plea agreement itself dealing with

14   the effect of the Litvak case.

15       THE COURT:  All right.  And now will you

16   summarize the cooperation letter, the

17   December 21st, 2015, cooperation agreement.

18       MR. FRANCIS:  Yes, your Honor.

19       This is a four-page letter from my office

20   to Mr. Polkes and Mr. Garcia, Mr. Siegel's

21   counsel.

22       Page 1 of this letter -- well, this letter

23   proposes to enter into a cooperation agreement

24   with Mr. Siegel.  Page 1 of this deals with the

25   scope of that -- of the cooperation which has

```
1              four provisions:
2                   First, the Defendant Mr. Siegel agrees to
3              be debriefed and to disclose fully and
4              truthfully all information concerning his
5              knowledge of and participation in criminal
6              activities by himself or others, whether or not
7              related to the charges to which he's pleading
8              guilty.
9                   Secondly, Mr. Siegel agrees to testify
10             truthfully before a grand jury and at any trial
11             or other proceeding in the District of
12             Connecticut or elsewhere.
13                  Third, Mr. Siegel agrees to cooperate fully
14             with the agents and officers pursuing the
15             investigation who are referred to in this
16             agreement.
17                  And, fourth, Mr. Siegel agrees not to
18             reveal any information derived from his
19             cooperation to any third party with the
20             exception of the Court without prior consent of
21             the Government.
22                  In exchange, the Government will in --
23             agrees to inform the sentencing Court of
24             Mr. Siegel's cooperation but explicitly states
25             that the Government will not recommend any
```

```
1        specific sentence.  If Mr. Siegel provides
2        substantial assistance in the investigation or
3        prosecution of any other person who has
4        committed an offense, the Government commits to
5        make a motion under Section 5K1.1 of the
6        United States Sentencing Guidelines, asking the
7        sentencing Court to depart from its guideline
8        calculation.  The Court is not -- although it's
9        not obligated to grant that motion.  And the
10       Government can make no promises to the eventual
11       sentence the sentencing Court will impose on
12       Mr. Siegel.
13            The Government agrees not to use any of
14       Mr. Siegel's statements in subsequent unrelated
15       prosecutions against him.  However, Mr. Siegel
16       agrees that nothing protects him from
17       prosecution for perjury, false statements,
18       obstruction of justice, or any other offense
19       after the date of this agreement.  If the
20       Government determines that Mr. Siegel has
21       intentionally given false, misleading, or
22       incomplete information or testimony; has
23       committed or attempted to commit any further
24       crimes; has failed to cooperate fully; or has
25       otherwise violated any provision of this
```

1       cooperation agreement, then the Government may

2       deem this agreement and/or the plea agreement

3       null and void.

4            However, if the Government voids only this

5       cooperation agreement, the defendant will not be

6       permitted to withdraw his plea of guilty or his

7       plea agreement.  If the cooperation agreement is

8       voided, then Mr. Siegel is subject to

9       prosecution premised on information provided

10      during his cooperation which will be admissible

11      against him, and he agrees to that.

12           And Mr. Siegel waives the statute of

13      limitations.

14           And then, finally, on page 4 of this

15      agreement, Mr. Siegel agrees there are no other

16      promises other than what's in writing in these

17      three agreements as taken together which

18      constitutes the plea agreement between the

19      Government and Mr. Siegel.

20           THE COURT:  All right.  Thank you.

21           Will you stand, Mr. Siegel.

22           Mr. Siegel, the rules obligate me to

23      address you with regard to one particular

24      section by itself.  So I'm going to begin with

25      that.  After that, I'm going to ask you

```
1              questions aimed at the entirety of your

2              agreement to make sure you understand your

3              agreement.

4                    THE DEFENDANT:  Yes, your Honor.

5                    THE COURT:  Are you with me?

6                    All right.  So I'm going to begin with your

7              right to appeal or collaterally attack

8              conviction or sentence.  That begins at page 4

9              and goes over to page 5.

10                    Do you see it?

11                    THE DEFENDANT:  Yes, your Honor.

12                    THE COURT:  Have you read it?

13                    THE DEFENDANT:  Yes, your Honor.

14                    THE COURT:  Been over it with your lawyer?

15                    THE DEFENDANT:  Yes, your Honor.

16                    THE COURT:  As I said, I'm going to address

17             you regarding that provision to make sure that

18             you understand.

19                    THE DEFENDANT:  Yes, your Honor.

20                    THE COURT:  Under certain circumstances, a

21             defendant might be able to challenge his

22             conviction and sentence.  A defendant might be

23             able to appeal his case to a higher court.  A

24             defendant also might be able to do what's called

25             "collaterally attack" his conviction or
```

1          sentence.  A collateral attack is when a

2          defendant files another lawsuit, usually called

3          a "habeas," in which the defendant makes an

4          argument that there's something legally wrong

5          with the conviction or the sentence and asks the

6          court to set it aside.

7               Do you understand a defendant might

8          ordinarily have those rights?

9               THE DEFENDANT:  Yes, your Honor.

10              THE COURT:  As part of your plea agreement

11         with the Government, you've given up some rights

12         along those lines.  First -- well, let's begin

13         with the Litvak condition.  I assume you've had

14         many conversations with your counsel about the

15         Litvak appeal and its possible consequences for

16         you?

17              THE DEFENDANT:  Yes, your Honor.

18              THE COURT:  So as to your right to appeal

19         or collaterally attack your conviction or

20         sentence, the parties agree that the outcome of

21         the Litvak case might be applicable to you if

22         the ultimate outcome of the Litvak case is that

23         the appellate courts decide that your conduct

24         does not constitute the securities fraud in

25         violation of 15 United States Code Section

```
 1              78j(b) and 78ff.  You then will have the right,
 2              notwithstanding any other provision here, to
 3              either appeal your case on those grounds or
 4              collaterally attack your conviction and sentence
 5              on those grounds.
 6                   Have I summarized that correctly?
 7                   MR. FRANCIS:  With one just addition, your
 8              Honor.  If the decision of the Second Circuit or
 9              the Supreme Court is that as a matter of law --
10                   THE COURT:  Yes.
11                   MR. FRANCIS:  -- the substantially similar
12              conduct by Mr. Litvak could not as a matter of
13              law have been a violation of securities fraud,
14              then yes, Mr. Siegel could not have entered --
15              he could not have entered a conspiracy to commit
16              securities fraud because he substantially did
17              the same thing.
18                   THE COURT:  Uh-hum.
19                   MR. FRANCIS:  So just the matter of law is
20              the provision.
21                   THE COURT:  Yes.
22                   MR. FRANCIS:  Because there are -- there
23              are some factually specific differences between
24              the Litvak case and the prosecution or the
25              conduct by Mr. Siegel.
```

```
 1              THE COURT:  All right.

 2              Defense counsel?

 3          MR. GARCIA:  Your Honor, I think the

 4      provision calls for Mr. Siegel to retain his

 5      rights to collateral attack or appeal in the

 6      event that the appellate courts decide that as a

 7      matter of law Mr. Litvak's conduct is not a

 8      violation of securities laws.  That's what I

 9      think the -- it says, and we've discussed that,

10      Mr. Siegel and I.

11              THE COURT:  Yes.

12          MR. GARCIA:  And he understands that.

13          THE COURT:  All right.  All right.  So I

14      understand what both the prosecution and defense

15      counsel have said.  Do either of you have any

16      commentary on the way the other has phrased it?

17      Do you agree?

18          MR. FRANCIS:  I think Mr. Garcia said it

19      really nicely.

20              THE COURT:  Yes.

21          MR. GARCIA:  So then so stipulated.

22          THE COURT:  All right.

23          MR. GARCIA:  Yes, your Honor.

24          THE COURT:  All right.  So now, Mr. Siegel,

25      do you understand that that's part of your plea
```

```
 1              agreement?

 2                   THE DEFENDANT:  Yes, your Honor.

 3                   THE COURT:  You have discussed that in

 4              depth with your counsel?

 5                   THE DEFENDANT:  Yes, your Honor.

 6                   THE COURT:  Do you have any questions about

 7              it?

 8                   THE DEFENDANT:  No, your Honor.

 9                   THE COURT:  All right.  So now I'm going to

10              go on and discuss the other aspects of your

11              right to appeal or collaterally attack

12              conviction and sentence.

13                   Again, with the exception of the Litvak

14              condition, you and the Government agree that you

15              will give up your right to challenge your

16              conviction, period.

17                   Do you understand?

18                   THE DEFENDANT:  Yes, your Honor.

19                   THE COURT:  You do not give up, however,

20              your right to appeal, collaterally attack, the

21              sentence that the judge imposes upon you.

22                   Do you understand that?

23                   THE DEFENDANT:  Yes, your Honor.

24                   THE COURT:  And you never give up your

25              right to appeal or collaterally attack your
```

1          conviction or sentence on the grounds of the

2          ineffective assistance of counsel.

3                  THE DEFENDANT:  Yes, your Honor.

4                  THE COURT:  Do you understand?

5                  All right.  Now -- excuse me.  Now I'm

6          going to ask you questions aimed at the entire

7          agreement you've entered into with the

8          United States Government, that is, the plea

9          agreement, which is contained in the

10         November 1st letter; its addendum, which is the

11         November 25th letter; and the cooperation

12         agreement, which is the December 21st letter.

13                 Do those written agreements, which together

14         form your plea deal with the Government which

15         have just been outlined by the Assistant United

16         States Attorney, fully and accurately reflect

17         your entire understanding of the agreement

18         you've entered into with the United States

19         Government?

20                 THE DEFENDANT:  Yes, your Honor.

21                 THE COURT:  Other than the promises

22         contained in the written agreement -- that is,

23         those three letters -- has anybody made any

24         promises to you that have caused you to want to

25         plead guilty?

1           THE DEFENDANT:  No, your Honor.

2           THE COURT:  Has anyone made any promises to

3      you as to what your sentence will be?

4           THE DEFENDANT:  No, your Honor.

5           THE COURT:  Has anyone threatened you in

6      any way in an attempt to get you to plead

7      guilty?

8           THE DEFENDANT:  No, your Honor.

9           THE COURT:  Has anyone attempted to coerce

10     or intimidate you into pleading guilty?

11          THE DEFENDANT:  No, your Honor.

12          THE COURT:  Is anybody forcing you to plead

13     guilty?

14          THE DEFENDANT:  No, your Honor.

15          THE COURT:  Do you want to plead guilty

16     because you choose to plead guilty voluntarily

17     of your own free will?

18          THE DEFENDANT:  I choose to plead guilty.

19          THE COURT:  All right.  The plea agreement,

20     the cooperation agreement, the addendum all may

21     be filed.

22          (Pause.)

23          THE COURT:  The defendant signed all three

24     in open court.

25          (Pause.)

1          MR. FRANCIS:  May I approach, your Honor?

2          THE COURT:  Yes, please.

3          (Pause.)

4          THE COURT:  They appear to be in order, and

5     they may be filed.

6          I'm going to address you now, Mr. Siegel,

7     about the sentence that can be imposed upon you

8     if you go ahead and enter a guilty plea.

9          First, if you plead guilty, the Court could

10    send you to jail for as long as five years.

11         You understand that?

12         THE DEFENDANT:  Yes, a maximum.

13         THE COURT:  In addition, there's a term of

14    supervised release of up to three years which

15    begins at the end of any jail term.  If you're

16    placed on supervised release, which is a form of

17    court supervision, you'll be required to satisfy

18    certain conditions while you're on supervised

19    release including that you not commit any crime.

20    If you were to violate any condition of your

21    supervised release, you could be required to

22    serve a further term of imprisonment of up to

23    two years with no credit for any time you

24    already spent on supervised release.

25         You're also exposed to a fine.  You're

```
 1              subject to what's called the "alternative fine
 2              provision."  Under the alternative fine
 3              provision, you may be sentenced to the greatest
 4              of the following:  $250,000 or twice the gross
 5              gain to you resulting from the offense or twice
 6              the gross loss resulting from the offense.
 7                   Do you understand?
 8                   THE DEFENDANT:  Yes, your Honor.
 9                   THE COURT:  The Government represents that
10              it has not calculated the amounts involved.  The
11              Government says that the greatest of those is
12              twice the gross loss resulting from the offense,
13              which is in the millions of dollars.
14                   Do you understand that?
15                   THE DEFENDANT:  I haven't seen the
16              calculations, but I understand that.
17                   THE COURT:  You understand you're exposed
18              to that regardless of the calculation?
19                   THE DEFENDANT:  Yes.
20                   THE COURT:  All right.  In addition, you
21              can be required to pay the costs to the
22              United States Government of any imprisonment,
23              probation, or period of supervised release.  If
24              a sentence of imprisonment is imposed, the rate
25              is $2,036.92 a month.  If a sentence of
```

```
 1              probation or supervised release is imposed, the
 2              rate is $294.60 a month.  If a fine of more than
 3              $2500 is imposed, you can be required to pay
 4              interest on any fine amount that is not paid
 5              within 15 days of the date you're sentenced.
 6              You'll also be required to pay a mandatory
 7              special assessment of $100.
 8                   The Court also must impose restitution;
 9              that is, the Court must enter an order requiring
10              you to make restitution.
11                   Does forfeiture apply?
12                   MR. FRANCIS:  It does not, your Honor.
13                   THE COURT:  You agree?
14                   MR. GARCIA:  I agree, your Honor.
15                   THE COURT:  Is my summary of the penalties
16              correct?
17                   MR. FRANCIS:  They are, your Honor.
18                   MR. GARCIA:  Yes, your Honor.
19                   THE COURT:  All right.  And, Mr. Siegel, do
20              you understand these possible consequences of
21              your guilty plea?
22                   THE DEFENDANT:  Yes, your Honor.
23                   THE COURT:  I'm now going to address you
24              regarding the sentencing guidelines.  The United
25              States Sentencing Commission has issued
```

1          guidelines that apply to your case.  Have you

2     and your lawyer talked about how the sentencing

3     guidelines might apply to you?

4          THE DEFENDANT:  Yes, your Honor.

5          THE COURT:  The sentencing guidelines are

6     advisory guidelines under which the court

7     calculates a recommended sentence using the

8     different facts of each case.  The calculation

9     results in a guideline range of possible

10    sentences.

11         The sentencing judge must consider the

12    guideline range as a recommendation that he

13    sentence you within that range.  The sentencing

14    judge also must consider any possible grounds

15    for departure from the guidelines.  He's

16    permitted to tailor your sentence in light of

17    certain statutory sentencing factors outside the

18    guidelines, but he's required to consider the

19    sentencing guidelines in deciding the sentence

20    to impose upon you.

21         The guidelines are not mandatory.  The

22    guidelines are advisory.

23         The guideline range for your case will be

24    determined after a presentence report is

25    prepared by the United States Probation Office

```
1            and you, your lawyer, and the U.S. Attorney's
2       Office have had an opportunity to comment on the
3       presentence report.  Until then, no one can be
4       sure what the guideline range will be.
5            You understand?
6            THE DEFENDANT:  Yes, your Honor.
7            THE COURT:  Now, your lawyer might have
8       advised you of his opinion as to what the
9       guideline range probably will be, but his
10      prediction might be wrong.
11           You understand?
12           THE DEFENDANT:  Yes, your Honor.
13           THE COURT:  If it turns out that the
14      guideline range is higher than you anticipated,
15      the mere fact that you expected to be sentenced
16      under a lower guideline range will not be a
17      basis for withdrawing your guilty plea or
18      overturning your sentence.
19           Do you understand?
20           THE DEFENDANT:  Yes, your Honor.
21           THE COURT:  Once again, I understand that
22      you want to plead guilty to the information
23      charging you with the conspiracy to commit
24      securities fraud in violation of 18 United
25      States Code Section 371.  To prove that you're
```

1    guilty of this charge, the Government would have

2    to prove beyond a reasonable doubt certain

3    things we call "elements of the offense."  I'm

4    going to ask the prosecutor to list the

5    elements.

6         MR. FRANCIS:  Your Honor, there are three

7    elements to committing a conspiracy to commit

8    securities fraud:

9         First, two or more persons must have

10    entered into an agreement to commit securities

11    fraud in violation of Title 15 United States

12    Code Section 78j(b) and Section 78ff;

13         Secondly, that the defendant knowingly

14    participated in the conspiracy with the specific

15    intent to commit the offense that was the object

16    of the conspiracy, in this case, with the object

17    of committing securities fraud;

18         And, thirdly, that, during the course of

19    the conspiracy, one of the members of the

20    conspiracy committed an overt act in furtherance

21    of the objectives of the conspiracy.

22         THE COURT:  All right.  Mr. Siegel, I'm

23    about to ask you what you did that shows that

24    you're guilty of the offense to which I'm --

25    you're offering to plead guilty.  Before I do

1          that, I want you to give you an opportunity to

2          speak with your lawyer if you want or need to

3          speak with him.  If you have any questions or

4          concerns that you want to discuss with counsel

5          before we proceed, take whatever time you need

6          and talk with him now.

7               (Pause.)

8               THE DEFENDANT:  I'm ready to proceed, your

9          Honor.

10              THE COURT:  All right.  Tell me in your own

11         words what you did that shows that you're

12         guilty.

13              THE DEFENDANT:  Your Honor, from

14         approximately 2008 to 2014, I worked at RBS, the

15         Royal Bank of Scotland.  While at RBS, I agreed

16         with others at RBS to occasionally misstate to

17         customers the price in which RBS purchased bonds

18         and whether the bonds RBS was selling were in

19         RBS's inventory.  From time to time I took

20         actions in furtherance of this agreement.

21              For example, on May 14th, 2009, I falsely

22         told a customer that RBS was negotiating to

23         purchase bonds from a third-party seller when I

24         knew that RBS had the bonds in inventory.

25         Although RBS owned the bonds at 37, I told the

1           customer that the seller's best price was 38.  I

2       knew the statement was not true, and I wanted

3       the customer to believe it.  I made these

4       statements in order to help RBS with my

5       negotiations with the customer.

6           THE COURT:  And why did you want the

7       customer to believe it?

8           THE DEFENDANT:  To facilitate the

9       negotiations.

10          THE COURT:  And what impact did that have

11      upon the customer?

12          THE DEFENDANT:  He --

13          THE COURT:  Was it false?

14          THE DEFENDANT:  The statement was not true.

15          THE COURT:  All right.  And so what

16      happened as a result?

17          THE DEFENDANT:  Ultimately the transaction

18      was completed.

19          THE COURT:  Did the customer pay more as a

20      result of the false information.  Or in the

21      alternative, did you make more?

22          MR. GARCIA:  I think it's just hard to know

23      what's in the mind of any particular customer

24      obviously, your Honor.

25          THE COURT:  Yes.

```
 1              MR. GARCIA:  But --
 2              THE DEFENDANT:  Potentially is the answer.
 3              THE COURT:  All right.  I'm going to ask
 4         the Government to recite their evidence that
 5         shows that you're guilty.  I want you to listen
 6         very carefully to everything that the Government
 7         says.  When the prosecutor finishes, I'm going
 8         to ask you if you agree or disagree.
 9              Do you understand?
10              THE DEFENDANT:  Yes, your Honor.
11              THE COURT:  All right.  Be seated.
12              Go ahead.
13              MR. FRANCIS:  If put through as proof at
14         trial, the Government would prove beyond a
15         reasonable doubt all of the elements of the
16         charged crime, that is, a conspiracy to commit
17         an offense against the United States in
18         violation of Title 18 United States Code
19         Section 371.  In particular, this was a
20         conspiracy to commit a fraud scheme prohibited
21         under the securities laws and SEC regulations,
22         specifically Title 15 United States Code
23         Section 78j(b) and 78ff as well as Title 17 Code
24         of Federal Regulations Section 240.10b-5.
25              The Government would make its case using
```

 1          documentary evidence and witness testimony.  The

 2          documentary evidence would include

 3          contemporaneous electronic messages among

 4          members of the conspiracy including Mr. Siegel.

 5          It would also include interstate electronic

 6          messages between conspirators and victims in

 7          which members of the conspiracy, including

 8          Mr. Siegel, made fraudulent misrepresentations

 9          or omissions or otherwise acted in furtherance

10          of the conspiracy.  The documentary evidence

11          would also include business records from the

12          victims and RBS Securities, Mr. Siegel's former

13          employer.

14               The Government's trial witnesses would

15          include victims, RBS employees, and federal

16          agents.  That evidence would prove the following

17          beyond a reasonable doubt:

18               Mr. Siegel previously worked as a managing

19          director in the Connecticut offices of RBS,

20          which is a registered broker-dealer.  Mr. Siegel

21          started at RBS's asset-backed products group in

22          July 2008 as the head trader for collateralized

23          loan obligations known as CLOs.

24               In February of 2011, Mr. Siegel was

25          promoted to co-head of United States

```
1              asset-backed securities, mortgage-backed

2              securities, and commercial mortgage-backed

3              securities trading, in which capacity he was

4              responsible for overseeing trading in various

5              products including CLOs and residential

6              mortgage-backed securities known as RMBS.

7                   As both a trader and a supervisor at RBS,

8              Mr. Siegel was part of an agreement with others

9              to perpetrate a fraudulent scheme against RBS

10             customers buying or selling CLOs and RMBSs.  The

11             purpose of the conspiracy was to benefit RBS and

12             thus the conspirators including by increasing

13             profits on trades at the victims' expense.

14                  In furtherance of the conspiracy,

15             Mr. Siegel and his coconspirators committed

16             numerous overt acts in the District of

17             Connecticut.

18                  For instance, Mr. Siegel and members of the

19             conspiracy, acting with the intent to deceive,

20             made fraudulent misrepresentations of

21             information relevant to pricing and price

22             negotiations that was important to their

23             victims.

24                  Moreover, Mr. Siegel furthered the

25             conspiracy by encouraging or allowing employees
```

```
1              that he supervised to make misrepresentations to

2              customers and by covering up coconspirators'

3              misrepresentations to customers and the

4              existence of the conspiracy in general.

5                   The evidence would show that the conspiracy

6              operated for a number of years and resulted in

7              misrepresentations and trades with at least 35

8              victims.  The economic effect of these

9              fraudulent trades was to increase RBS's profits

10             by millions of dollars at those victims'

11             expense.

12                  THE COURT:  All right.  Mr. Siegel, did you

13             hear everything that the prosecutor just told

14             me?

15                  THE DEFENDANT:  Yes, your Honor.

16                  THE COURT:  Do you agree or disagree?

17                  MR. GARCIA:  Your Honor, just, you know,

18             Mr. -- the prosecutor, the Government's, in a

19             position to know certain facts that Mr. Siegel

20             obviously isn't, but I think Mr. Siegel would

21             stipulate and concede that there is a factual

22             predicate for his entry of a plea of guilty if

23             that's okay with your Honor.

24                  THE COURT:  Well, I want to know what he

25             agrees with and what he disagrees with.
```

```
1              THE DEFENDANT:  I would say that,
2         certain [sic] of all, certainly the statement
3         that I made in terms of the plea I agree with.
4         I would say within -- I'm obviously not in a
5         position to know what was in the mind of
6         customers or what reliance they had, but I would
7         say that, you know, I permitted the existence of
8         it.  The -- I'm not saying I encouraged it, but
9         I would say I permitted it.
10             I'm just looking at Mr. Garcia's notes on
11        it.
12             You know, I did join RBS in 2008.  I was a
13        managing director.  I did -- I was promoted in
14        2011.  The -- and, you know, I think there's
15        probably --
16             THE COURT:  Why don't you tell me in your
17        own words.
18             THE DEFENDANT:  Sure.  I would say in my
19        own words I knew of and occasionally and very
20        rarely participated in the making of false
21        statements to customers such as the price a bond
22        was being purchased at or whether or not it was
23        in RBS's inventory or a third-party seller.
24        And, therefore, the underlying facts to that are
25        true.
```

1          THE COURT:  So you knew or the objective --

2      I would say the objective was to increase

3      profits on trades at the victims' expense?

4          THE DEFENDANT:  No.  I would say there's --

5      there are several reasons it could have been.

6      It doesn't necessarily need to be to increase

7      profit.  It could be to simplify negotiations,

8      expedite negotiations, customer relationships

9      where you didn't want to tell somebody that it

10     was in inventory because for whatever reason.

11     You didn't want to be a bad guy.  But --

12         THE COURT:  Your lawyer is trying to speak

13     to you.

14         THE DEFENDANT:  -- I knew (indiscernible -

15     cross-talk).

16         (Pause.)

17         THE DEFENDANT:  But I understand that it

18     had the potential to impact the parties that it

19     did.

20         MR. FRANCIS:  Your Honor, we agree that

21     there's a sufficient factual predicate for the

22     Court to accept Mr. Siegel's plea of guilty.

23     While he's not in a position necessarily to know

24     what the basis for the Government's proffer of

25     what its evidence would be at trial is, there

```
1        are -- the Government's investigation has
2        uncovered numerous documents that he does not
3        have access to as well as talking to many, many
4        people that he presumably has not or his defense
5        has not had a chance to talk with.  And so we
6        would ask that your Honor accept the plea based
7        on his allocution in his response to your
8        questions.
9            Actually, your Honor, can I have a moment
10       with defense counsel?
11           THE COURT:  Yes.  Would you like me to take
12       a break?
13           MR. FRANCIS:  No.  Well, let us see if we
14       can do this quickly.
15           (Pause.)
16           MR. FRANCIS:  Your Honor, can we please
17       have a short recess?
18           THE COURT:  Yes.
19           MR. FRANCIS:  Thank you.
20           THE COURT:  We're in recess.
21           (Recess:  1:08 to 1:26 p.m.)
22           THE COURT:  All right.
23           MR. GARCIA:  Your Honor, Mr. Francis had a
24       mouthful to his proffer before and -- a mouthful
25       to his proffer of evidence before, and
```

```
1                Mr. Siegel now has some additional information

2           he would like to provide the Court in response

3           to Mr. Francis's proffer of evidence.

4                THE COURT:  All right.

5                THE DEFENDANT:  Your Honor, I'd love to

6           clarify just a couple of points.

7                First, when I said that I very rarely and

8           occasionally engaged in trades in which I lied,

9           I was referring to the trades that I personally

10          negotiated.

11               Second, I understand that the impact of

12          these trades, of completing the trades, would be

13          that RBS would benefit financially.

14               And, third, on one or more occasions, I

15          also encouraged others to engage in the same

16          conduct.

17               THE COURT:  All right.  And when you talk

18          about these trades, you mean the trades in

19          connection with which there were false

20          statements made?

21               THE DEFENDANT:  Yes, your Honor.

22               THE COURT:  And you agreed with other

23          people to do that?  That is, other people were

24          involved?

25               THE DEFENDANT:  Yes.  Yes, your Honor.
```

```
 1              THE COURT:  And you'd do that -- you did
 2         that knowingly?  You knowingly participated with
 3         other people in either making these false
 4         statements or causing them or approving them or
 5         furthering them?
 6              THE DEFENDANT:  Yes, your Honor.
 7              THE COURT:  All right.  And we've already
 8         covered the overt acts.
 9              Do either counsel have anything further
10         they want to say about the factual basis?
11              MR. FRANCIS:  Nothing from the Government.
12              MR. GARCIA:  Nothing from the defense, your
13         Honor.
14              THE COURT:  All right.
15              All right.  Have you completed the
16         petition?
17              MR. GARCIA:  Yes, we have, your Honor.
18              THE COURT:  Has the Government seen it?
19              MR. FRANCIS:  We have, your Honor.
20              THE COURT:  Does it appear to be in order?
21              MR. FRANCIS:  It does.
22              THE COURT:  All right.  You may sign the
23         petition here in open court.  You've discussed
24         the petition, Mr. Siegel, fully with counsel?
25              THE DEFENDANT:  Yes, your Honor.
```

1          THE COURT:  All right.

2          (Pause.)

3          THE COURT:  Hand it up.

4          UNIDENTIFIED SPEAKER:  Thank you, your

5     Honor.

6          (Pause.)

7          THE COURT:  The petition may be filed.

8          Mr. Siegel, based on everything I've seen

9     and heard, it appears to me that you want to

10    plead guilty because you believe you are guilty

11    and that you choose to plead guilty freely and

12    voluntarily; is that correct?

13         THE DEFENDANT:  Yes, your Honor.

14         THE COURT:  I'm about to take your guilty

15    plea.  I'll have the charge read to you unless

16    you waive the reading of the charge.

17         Do you waive the reading?

18         THE DEFENDANT:  I waive the reading.

19         THE COURT:  Mr. Clerk, please.

20         COURTROOM DEPUTY:  Yes, your Honor.

21         In the case of the United States of America

22    versus Adam Siegel, Criminal No.

23    3:15-CR-231-RNC, as to Count One of the

24    information, a charge in violation of Title 18

25    United States Code Section 371, how do you wish

1          to plea?

2                THE DEFENDANT:  Guilty.

3                COURTROOM DEPUTY:  Your Honor, he's pleaded

4          guilty to Count One of the information.

5                THE COURT:  On the basis of the defendant's

6          petition to enter a plea of guilty, defendant's

7          answers to my questions in open court, the

8          remarks of defense counsel and the Assistant

9          United States Attorney, I find that the

10         defendant is fully competent and capable of

11         entering an informed plea, that the defendant

12         understands the nature of the charge against

13         him, that he knows his right to a jury trial and

14         his other trial-related rights, that he knows

15         the maximum possible sentence and the other

16         possible consequences of a guilty plea.  I

17         further find that the defendant's plea of guilty

18         is a knowing and voluntary plea supported by an

19         adequate factual basis as to each of the

20         essential elements.

21              I'm going to recommend that the defendant's

22         plea of guilty be accepted.  The case will be

23         referred to the United States Probation Office

24         for presentence investigation.  It is so

25         ordered.

1              You may sit down.

2              THE DEFENDANT:  Thank you, your Honor.

3              THE COURT:  All right.  We have a

4     United States Probation Officer here.  He will

5     interview you at the conclusion of this hearing.

6     Either this officer or a colleague of this

7     officer later will prepare a presentence report

8     which will be submitted to the judge to help the

9     judge determine the appropriate sentence for

10    you.

11             You should remember that the probation

12    officers work for the court not for the

13    prosecution.  Your cooperation with the

14    probation officer generally will benefit you,

15    but it's important that you carefully discuss

16    with counsel what you say to the probation

17    office because the presentence report is very

18    important in determining your sentence.

19             Do you understand?

20             THE DEFENDANT:  Yes, your Honor.

21             THE COURT:  Counsel for either party may

22    submit its version of the offense to the

23    probation office.

24             Mr. Siegel, you have a right to object to

25    items contained in or omitted from the

1          presentence report.

2                  Defense counsel must read and review the

3          presentence report with the defendant prior to

4          the date for submitting objections to the

5          report.

6                  After receiving objections, the probation

7          officer shall conduct any further investigation

8          and make any revisions to the presentence report

9          that might be necessary.  The revised

10         presentence report will then be disclosed to the

11         Court and to counsel.

12                 Defense counsel must read and review the

13         presentence report with the defendant prior to

14         the sentencing hearing.

15                 The presentence report must be disclosed to

16         the defendant, to counsel for the defendant, and

17         to the Government on or before January 29th,

18         2016.

19                 Counsel shall communicate to the probation

20         officer any objections to the presentence report

21         on or before February 3rd, 2016.

22                 The amended presentence report must be

23         disclosed to counsel and to the Court on or

24         before February 22nd, 2016.

25                 Not later than ten days before sentencing,

58

```
1        counsel for both parties may submit sentencing
2        memoranda to the Court addressing any factual
3        inaccuracy in the final presentence report, the
4        guidelines calculations, the available
5        sentencing options, any restitution issues, any
6        bases for departure, and any other factual or
7        legal issue relevant to sentencing.
8            Counsel's attention is directed to Rule 32
9        of the District of Connecticut's Local Rules of
10       Criminal Procedure to guide them in their
11       careful preparation for sentencing.
12           Sentencing will be on March 11th, 2016, at
13       2:00 o'clock at the U.S. District Court north
14       courtroom, 450 Main Street in Hartford.
15           Is there an application for release pending
16       sentencing under 18 U.S.C. 3143?
17           MR. GARCIA:  Yes, your Honor.  The defense
18       moves to have Mr. Siegel remain free pursuant to
19       terms that have been negotiated with Mr. Francis
20       and the U.S. Attorney's Office and which the
21       probation officer is aware.
22           We can go into details now, your Honor,
23       or -- we request that Mr. Siegel be permitted to
24       leave court today under a personal recognizance
25       bond of $250,000 no co-signer.  We request that
```

1     his -- be allowed to travel in the lower

2     contiguous 48 states but also internationally

3     with notice to the probation officer.

4          Mr. Siegel is a United States citizen.

5     He's lived in this country his whole life.  All

6     of his family resides in this country.  Despite

7     having entered into a plea agreement, he

8     continues to be employed very productively and

9     contributes not only to our own country but

10    frankly to countries abroad including among

11    other places -- to other countries.  And that

12    takes him -- his work takes him on travel to

13    those countries.

14         So, your Honor, we would request that

15    Mr. Siegel be permitted to continue traveling in

16    connection with work on notice to the probation

17    officer and to the Government concerning that

18    travel.

19         He is not a risk of flight.  He is married

20    with children, three children currently, a

21    fourth on the way.  He has no relatives

22    overseas.  And importantly during the period of

23    discussing his cooperation with the Government,

24    he's been proactively cooperative with the

25    Government.  And, in fact, since the time that

1        he signed the plea agreement back in November,

2        he's actually traveled internationally in

3        connection with his business to at least

4        approximately ten or so countries, a few -- a

5        few fewer than that and has always come back and

6        returned obviously to appear today to ultimately

7        accept responsibility, which he did.

8            So, your Honor, for those reasons we think

9        a personal recognizance bond of $250,000 without

10       a co-signer and with travel permitted but on

11       notice to the probation office and the

12       Government is sufficient.

13           THE COURT:  The family resides in the

14       district?

15           MR. GARCIA:  Yes, your Honor.

16           THE COURT:  All right.  The Government have

17       anything to say?

18           MR. FRANCIS:  So obviously everything that

19       Mr. Garcia just said was in addition to the

20       standard conditions of release that your Honor

21       would usually impose.

22           And with respect to the travel -- with

23       respect to the international travel, my

24       understanding was the defense was going to give

25       the Government and probation office a list like

```
1              now or relatively shortly of countries that

2              Mr. Siegel has business in --

3                   THE COURT:  I was about to ask that.

4                   MR. FRANCIS:  -- and so that we know in

5              advance.  We can preclear and make sure we're

6              comfortable with all those.  And then the notice

7              to probation, I think, just requires a little

8              bit more detail.

9                   THE COURT:  Well, it's not notice to

10             probation.  The defendant simply doesn't

11             announce that he's leaving the country.  He

12             needs the probation officer's permission to

13             leave the country, and I'll address that in a

14             moment.

15                  MR. FRANCIS:  Well, as your Honor says,

16             clearly it's your Honor's discretion, but we

17             would like the information provided to probation

18             in advance of travel to include travel dates and

19             times, flight information, where he'll be

20             staying, that sort of information.  Obviously

21             it's a heightened level of information that he

22             would normally provide, but he'll be out of the

23             country.  So it doesn't seem unreasonable.

24                  MR. GARCIA:  Your Honor, I think we'll

25             likely be able to work this out with the
```

1    probation officer also.  I think the reason why

2    I used the phrase "on notice" was really only

3    because sometimes Mr. Siegel has to travel --

4    his notice -- the notice he receives about his

5    need to travel for business is very short, but

6    there's no question that he would be able to get

7    information to the probation officer in advance

8    to let him know and to seek his approval

9    including, among other things, an itinerary

10   involving where he's staying and contact

11   information when he's abroad.  I'm sure we can

12   work this out.

13        THE COURT:  And what countries are we

14   talking about?

15        MR. GARCIA:  This list is a nonexclusive --

16   it may change, your Honor, but I think in the

17   foreseeable future, Mr. Siegel anticipates that

18   he may be traveling for business to, among other

19   places, Bermuda --

20        (Pause.)

21        MR. FRANCIS:  Your Honor, may I interject

22   here?

23        THE COURT:  Yes.

24        MR. FRANCIS:  To the extent that we're

25   coming up with a list that's nonexclusive and

1        there may be others, that's not really helpful

2        to the Government, and I would submit to

3        probation --

4             THE COURT:  I can take care of this,

5        Counsel.  I can take care of this.  Be seated.

6             MR. GARCIA:  -- Bermuda, Barbados, Jamaica,

7        Costa Rica, the Caymans, Turks and Caicos, the

8        Bahamas.

9             (Pause.)

10            MR. GARCIA:  Additionally, your Honor, the

11       Dominican Republic, Puerto Rico, United Kingdom,

12       Chile, Trinidad and Tobago, Haiti, Cuba, Panama,

13       Mexico.  And, your Honor, I think that is where

14       travel is anticipated at this time.

15            When I said, "nonexclusive," I meant only

16       that, if there are additional places he needs to

17       travel in the future, we would put that before

18       your Honor obviously and before the probation

19       officer and seek permission at that time.

20            THE COURT:  And what is Mr. Siegel's

21       business?

22            MR. GARCIA:  He's an independent consultant

23       who advises on energy matters.

24            THE COURT:  And how frequently is he

25       expected to travel?

```
1              MR. GARCIA:  Mr. Siegel travels almost
2         every week or has traveled almost every week as
3         far as -- as long as I've known him and
4         oftentimes several times a week.  So he
5         travels -- he works a lot, and he travels quite
6         a lot.
7              THE COURT:  All right.  All right.
8              Does the Government have any information
9         that Mr. Siegel is either a danger or risk of
10        flight?
11             MR. FRANCIS:  We do not, your Honor.
12             THE COURT:  All right.
13             All right.  I'll set a bond of $250,000
14        secured by the agreement of the defendant to
15        forfeit that amount in the event of his failure
16        to appear.  It's a type 3(b) bond.  And I'll set
17        the following conditions of release:
18             The defendant must not violate any federal,
19        state, or local law while on release in this
20        case.
21             He must cooperate in the collection of a
22        DNA sample if authorized by statute.
23             He must advise the court or the pretrial
24        services officer/supervising officer in writing
25        before any change of address or telephone
```

1         number.

2             He must appear in court as required and

3         surrender to serve any sentence that the Court

4         might impose.

5             He must sign the appearance bond.

6             Give me just a moment.

7             (Pause.)

8             THE COURT:  All right.  7(a), the defendant

9         must submit to supervision by and report for

10        supervision to the United States Probation

11        Office within their discretion.

12            He must continue or actively seek

13        employment.

14            He may retain his passport.  I'll take up

15        the restrictions on travel in just a moment.

16            Do either counsel want to address the

17        question of contact restrictions?

18            MR. FRANCIS:  Nothing from the Government.

19            THE COURT:  All right.

20            Do you have any firearms, Mr. Siegel?

21            THE DEFENDANT:  No, your Honor.

22            THE COURT:  Defendant may not possess a

23        firearm, destructive device, or other weapon.

24            No excessive use of alcohol.

25            The defendant may not use or possess a

1          narcotic drug or other controlled substance

2          unless prescribed by a licensed medical

3          practitioner.

4               Defendant must report as soon as possible

5          to the pretrial services officer/supervising

6          officer every contact with law enforcement

7          personnel including arrests, questioning, or

8          traffic stops.

9               In connection with business only -- that

10         is, not for personal reasons -- in connection

11         with business only, the defendant may travel to

12         the following:  Bermuda, Barbados, Jamaica,

13         Costa Rica, the Caymans, Turks and Caicos, the

14         Bahamas, the D.R., the U.K., Chile, Trinidad and

15         Tobago, Haiti, Cuba, Panama, and Mexico.

16              If there are any other countries to which

17         the defendant wants to travel for business

18         reasons, counsel, of course, may submit a motion

19         to the court.

20              The defendant must seek the permission of

21         and obtain the approval of the United States

22         Probation Office 72 hours in advance of any

23         travel, and I know that the probation office

24         will respond to any requests promptly.

25              MR. GARCIA:  Your Honor, just with regard

1          to the time, is there any way that we can reduce

2          the amount of time because he does get asked to

3          travel on business on a moment's notice, and if

4          we could even reduce it to even just 24 hours,

5          that would be hugely helpful.

6               Among other things, your Honor, sometimes

7          when he's traveling to a -- when he's in the

8          Caribbean, he may actually be told there that he

9          needs to go someplace else before coming back to

10         the States.  I mean, it's a very -- somewhat

11         fluid, and I think if we can get just 24 hours

12         notice even, that would be really helpful.

13              THE COURT:  Uh-hum.  And how frequently

14         does he -- is he called upon to go to another

15         country on a moment's notice?

16              (Pause.)

17              MR. GARCIA:  All right.  Just by way of

18         example, your Honor, I guess last Wednesday

19         Mr. Siegel was in Dallas.  He went to Dallas for

20         business, and only when he got to Dallas did he

21         realize and learn that he needed to then go make

22         a trip to Florida and then make a trip to

23         Jamaica by the end of the week.  So between

24         Wednesday -- having left his house on Wednesday

25         intending only to go to Dallas, wound up going

```
1              to Florida and Jamaica by the end of the week.

2                   THE COURT:  Uh-hum.

3                   MR. GARCIA:  So and that is not atypical I

4         don't think.

5                   THE COURT:  All right.  Give me a moment.

6                   (Pause.)

7                   THE COURT:  All right.  I'm going to order

8         72 hours, 72 hours.  If there is an instance of

9         extremely short notice -- that is, the defendant

10        himself gets less than 72 hours notice -- then

11        I'll permit 48, 48 hours.  But I expect the

12        normal to be 72.

13                  MR. GARCIA:  Thank you, your Honor.

14                  THE COURT:  I'm ordering a presentence

15        investigation and report and making a finding

16        and recommendation on the defendant's plea of

17        guilty.

18                  They may be filed.

19                  All right.  Mr. Siegel, you understand that

20        a failure to comply with the conditions I've

21        just set for your release can have very serious

22        consequences, don't you?

23                  THE DEFENDANT:  Yes.

24                  THE COURT:  You must appear for sentencing

25        as required.  Again, the consequences for
```

```
1              failure to abide by those conditions can be

2         severe.

3              I've signed the appropriate paperwork.  Is

4         there anything else we should do in Mr. Siegel's

5         case today?

6              MR. FRANCIS:  Nothing from the Government,

7         your Honor.

8              THE COURT:  All right.  I'll take a --

9              MS. DRONEY:  Nothing from the defense, your

10        Honor.

11             THE COURT:  -- brief recess, and then we'll

12        resume with the next criminal case.

13             (Proceedings concluded at 1:53 p.m.)

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                       CERTIFICATE

 2

 3          I hereby certify that the foregoing 69 pages

 4   are a complete and accurate transcription to the best of

 5   my ability of the electronic recording of the PLEA

 6   AGREEMENT in re:  UNITED STATES OF AMERICA vs. ADAM

 7   SIEGEL, Criminal No. 3:15-CR-00231-RNC, held before The

 8   Hon. Donna F. Martinez, United States Magistrate Judge, in

 9   Hartford, Connecticut, on December 21, 2015.

10

11

12   s/s_____          12-23-15

13   Rachel M. Riemer, Transcriber            Date

14

15

16

17

18

19

20

21

22

23

24

25
```